## Case No. 11,373.

PRATT et al. v. BURR et al.

[5 Biss. 50.] [1]

Circuit Court, D. Wisconsin.    April, 1858.

PAYMENT TO ASSIGNEE—WHEN NO PROTECTION.

1. Where a bill was filed by the payees against the assignee and maker of a note to set aside the transfer and recover the note, the summons being duly served on the maker, the payment by him of a judgment in favor of the assignee rendered in another court on a suit subsequently commenced, does not discharge his liability to the payees.

2. To protect himself, he should have given the payees notice of the second suit and required them to defend it, or have paid the money into court on the first suit.

[This was a bill in equity by Samuel F. Pratt and others against John C. Burr, Morgan Craig, William D. Mead, and others. It was formerly heard upon the question of homestead exemption. Case No. 11,372.]

MILLER, District Judge. The bill in this case was filed on the 7th of August, 1856. A subpœna was issued and an injunction was allowed. William D. Mead acknowledges in his answer that he gave promissory notes to Burr & Craig, in part for the consideration of their store goods sold him. Two of these notes passed from Burr & Craig to R. H. Maynard, and to which he, Maynard, under the circumstances, did not acquire title in the usual course of commercial business, and he was not a bona fide holder as settled in this court. These complainants had an equitable lien on the notes or the money secured by them, in the hands of Mead, by virtue of this creditors' bill. The only question submitted is: "Is Mead relieved of liability to these complainants by reason of the judgment against him in Rock county circuit court, in favor of Maynard, on the note, and by his subsequent payment of that judgment?"

By inspection of the record, it appears that Maynard commenced suit on the note, against Mead, by serving a declaration on the 14th of January, 1857, with a rule to plead. Afterwards Mead filed a plea of the general issue with notice of the issuing and service of the injunction in this case; and that it was known to Maynard when he purchased or received the note of Burr & Craig. On the 2d of July, 1857, the parties appeared in court, by their counsel, and the cause came on to be tried before the court, the jury being waived; and the finding of the court and judgment were for the plaintiff for the amount of the note and interest. And on the 15th day of October, 1857, at Erie county, in the state of New York, the plaintiff executed a satisfaction piece of the judgment. It was stated at the argument that Mead's counsel several times spoke to complainants' counsel on the subject of that suit, and what was best to be done, and complainants' counsel

concluded not to interfere in the suit. These complainants were not placed under any obligation to defend that suit either by a notice from Mead or by a bill of interpleader. They had no notice of the trial; nor are we informed by testimony what evidence was offered, admitted, or rejected at the trial. If notice had been served on the complainants of the pendency of the suit, requiring them to appear and make defense, possibly they would be bound by that finding and judgment. In August last, that court decided that the two notes (of which the note in this suit is one) were transferred by Burr & Craig in fraud of these complainants and in contempt of this court, and that Maynard was not entitled to the money as a bona fide holder without notice. The first note was sued in this court, on which judgment was rendered against Mead, who paid the amount into court for distribution; the day after Maynard brought suit on the second note in the circuit court of Rock county. These plaintiffs were not parties to that suit in Rock county, and it is not in any way binding on them. So far as they have a lien on the money, and have a right to demand it in equity, they are not concluded. Judgments are only conclusive between parties and privies. At the trial of that case, these complainants had no notice nor opportunity to put in proof to show that Maynard was not a bona fide holder of the note. The trial was exclusively between Maynard and Mead. Maynard had a legal right to bring his suit against Mead in the state court, and to have it tried there; but Mead owed a duty to himself, before that trial and plea filed, to notify these complainants of the suit and to require them to make defense in his name and to furnish the evidence to defeat Maynard's recovery. Mead should have served the notice on these complainants or their attorneys and placed it on the files of that case, before filing plea. Nothing short of this can conclude these complainants. They were not bound to appear, nor could they appear or interfere with the suit without Mead's consent or requirement.

This suit in equity was pending against Mead a considerable time before the suit in Rock county. This suit prevented Mead from paying the amount of the note until it was ascertained whether it was negotiated and in the hands of a bona fide holder. The answer of Mead that he gave the notes but does not know whether they were negotiated or not, raised the question. If Mead had paid into this court the amount of the notes, Maynard might have appeared here and claimed this money, when his claim would have been disposed of by the court on evidence submitted, or upon an issue tried by a jury. Instead of doing that, Maynard took his suit out of this jurisdiction where the question was pending, into another jurisdiction where he and Mead had the matter tried in their own way without legal notice to these complainants.

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

This creditors' bill is an attachment in equity of the money in the hands of Mead owing by him on a negotiable promissory note. An attachment is unavailable against a bona fide holder for value, of negotiable paper, who obtains it after attachment, before maturity, and without notice. Kieffer v. Ehler, 6 Harris [18 Pa. St.] 388, and cases cited. The only question, as I remarked before, to be tried here was whether Maynard was a bona fide holder of the note.

In Kennedy v. Brent, 6 Cranch [10 U. S.] 187, the service of a subpœna in chancery, in a case of chancery attachment, will make the garnishee liable, if he pays the money after the notice of the subpœna. Such is the case in every attachment. An attachment in a state court, commenced after the institution of an action to recover a debt in a court of the United States, cannot be pleaded as a defense to the latter, either in whole or in part. Wallace v. McConnell, 13 Pet. [38 U. S.] 136, 151. This decision is upon the reverse order to the state of the case here. The attachment here was the first. In the opinion in that case it is remarked: "The jurisdiction of the district court, * * * and the right of the plaintiff to prosecute his suit in that court, having attached, that right could not be arrested or taken away by any proceedings in another court. This would produce a collision in the jurisdiction of courts, that would extremely embarrass the administration of justice. If the attachment had been conducted to a conclusion and the money recovered of the defendant before the commencement of the present suit, there can be no doubt that it might have been set up as a payment upon the note in question;" and if such could be pleaded in bar, "the same principle would support a plea in abatement of an attachment pending prior to the commencement of the present suit. The attachment of the debt in such case in the hands of the defendant, would fix it there in favor of the attaching creditor, and the defendant could not afterward pay it over to the plaintiff. The attaching creditor would in such case acquire a lien upon the debt binding upon the defendant, which the courts of all other governments, if they recognize such proceedings at all, could not fail to regard. If this doctrine be well founded, the priority of suit will determine the right. The rule must be reciprocal; * * * the maxim, 'Qui prior est tempore, potior est jure,' must govern the case. This is the doctrine of this court in the case of Renner v. Marshall, 1 Wheat. [14 U. S.] 216; and also in the case of Beaston v. Farmers' Bank of Maryland, 12 Pet. [37 U. S.] 102." In Hacker v. Stevens [Case No. 5,887], the money owing on a note was attached in the hands of the debtor. The note was indorsed or assigned and the assignee brought suit against the maker, who pleaded in abatement the attachment, which plea was sustained, although the two suits were not in the name of the same parties.

In that case the note was transferred to one of the firm to whom the note was payable. In this case the note was transferred to a brother-in-law of one of the payees, under very suspicious circumstances. There is no doubt but Maynard knew of the pendency of this suit in this court before he commenced his suit in the state court. He should have come here and through Mead, as a defendant, have had his right to the money tried. From the situation of that case in the state court as placed by Maynard and Mead by their pleadings, the court might have continued the trial if asked by Mead until a reasonable time for the trial of this case. This court would in the exercise of its discretion have done so, under like circumstances, but there is nothing on the record showing that such application was made, or that a plea in abatement was filed.

The satisfaction piece attached to the record of the judgment in Rock county is no evidence of payment except as between the parties to the judgment. It satisfies the judgment, but it is not evidence affecting these complainants of the absolute, bona fide payment of money. It is nothing more than a mere declaration of a party not under oath, as to the rights of these complainants. Lloyd v. Lynch, 4 Casey [28 Pa. St.] 419, and cases cited. But from the view taken of this case it makes no difference whether the judgment has been satisfied or not. Mead should have taken some of the means here pointed out to prevent the judgment being rendered against him in the circuit court of Rock county.

The proof clearly showing that Maynard was not a bona fide holder of the note, and that the title still remains in Burr & Craig, reference will be made to a master to ascertain the amount due.